Michael S. Novaselec, Appellant, *v.* Workmen's Compensation Appeal Board and Jones & Laughlin Steel Corporation, Appellees.

Argued January 9, 1975, before Judges CRUMLISH, JR., ROGERS and BLATT, sitting as a panel of three.

*Joseph M. Ludwig*, with him *Gustav M. Berg*, for appellant.

*Henry J. Wallace, Jr.*, with him *Reed, Smith, Shaw & McClay*, and *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE ROGERS, February 19, 1975:

This workmen's compensation case turns on whether the claimant, Michael S. Novaselec gave notice of his injury in an industrial accident to his employer within 120 days after its occurrence, as required by Section 311 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §631 (Supp. 1974-1975).

Mr. Novaselec, an employee of Jones & Laughlin Steel Corporation, filed a claim petition on January 24, 1967, averring that he struck a steel column while driv-

ing a tractor on February 6, 1966, sustaining back injuries. The employer's answer alleged, *inter alia*, that no notice of the injury was provided within the time fixed by the Act.

At a referee's hearing conducted on August 2, 1967, the claimant stated that his accident with the tractor was witnessed by Mr. Carmen Ross, an assistant superintendent of the employer's industrial plant; that he, the claimant, continued to work, with discomfort to his back, until March 1966, after which he was unable to work; that in May of 1966 he visited his employer's doctor who advised against continuing to work; and that he underwent an operation on his back on May 18, 1966.

The referee made his report and decision in April 1969, in which he found that no notice of the "happening of an accident" was given within the statutory period. On appeal by the claimant, the Workmen's Compensation Board affirmed the referee's disallowance of compensation on the ground that while the record might establish that the assistant superintendent witnessed an *accident*, it did not contain proof that the assistant supervisor knew that the claimant had been *injured* in the accident. The claimant appealed to the Court of Common Pleas of Allegheny County in January 1970, which by a one sentence holographic order of the late Judge LENCHER, dated June 6, 1972, remanded the case to the Board "there to proceed *sec. leg.* and *sec. reg.*" No explanation of the two and one-half years delay appears in the record.

The parties agreed that Judge LENCHER meant that there should be further hearings and the Board ordered such. On November 27, 1972, the claimant again testified. In addition to repeating his account of Mr. Ross's witness of the accident, he testified on direct examination that because of back pain he worked only part of the day following the accident; that his wife reported him as ill; that within three weeks after the

accident one Art Laughner, the superintendent of the mill, communicated with him; and that he told Mr. Laughner during this conversation of the injury to his back. On cross-examination, he described a further conversation concerning the matter with Mr. Laughner, at which Mr. Ross was present, and which he stated occurred above seven and one-half months after the accident.

Following the second hearing, the employer filed a motion to dismiss the claim petition on the ground that it was unfair to permit the claimant to adduce evidence of conversations with Mr. Laughner and Mr. Ross allegedly occurring in 1966 at a hearing held more than seven years later, when, as it averred, neither Mr. Laughner nor Mr. Ross was available to rebut this testimony. The referee, *in considering the employer's petition,* conducted his own investigation, in the course of which he ascertained that while Mr. Laughner was dead, Mr. Ross was in fact living and available. The referee dismissed the employer's petition.

The referee filed his decision on the claim in September 1973, finding that the conversation in which the claimant notified Mr. Laughner, the plant superintendent, of his injury three weeks after the accident had in fact occurred, concluding that the claimant had met the notice requirements of Section 311 and awarding compensation. The employer appealed the referee's decision. By order made April 4, 1974, the Workmen's Compensation Appeal Board reversed the referee's award and dismissed the claim petition. In so doing, the Board vacated the referee's finding concerning the notice of injury given three weeks after the accident to Mr. Laughner and substituted its finding that the claimant failed to give notice of his injury within 120 days from the date it was sustained. There is before this court the claimant's appeal from the Board's order.

The Board's opinion recites the evidence accurately and in detail pointing out inaccuracies therein, with particular emphasis on the facts that at the 1967 hearing the claimant had not related the conversation with the superintendent to which he testified in 1972 and that while in 1967 the claimant testified that he continued to work until March 1966, he claimed in 1972 to have been unable to work during part of the day following the accident. The Board concluded its discussion of the evidence as follows: "In short, the testimony of claimant is too inconsistent and is too contradictory to be believed." In short, the Board substituted its crucial finding of failure to give notice for the contrary finding of the referee, upon the Board's judgment that the claimant's testimony lacked credibility. This it had no power to do. We held in *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973), that amendments to the Workmen's Compensation Act effective on May 1, 1972, placed the fact-finding function, including determinations of credibility, with the referee and removed it from the Board. We add that we have examined the claimant's testimony at the several hearings and take a less serious view than the Board of the so-called inconsistencies and contradictions in the claimant's testimony. The matter of notice was most casually explored at the first hearing, the claimant's then counsel apparently depending for proof on this issue upon Mr. Ross's presence at the scene of the accident. The distinction made by the Board on appeal between Mr. Ross's witness of an accident and his witness of an injury, while correct, was somewhat technical. Further, questions were asked at the first hearing tending to elicit the conversation with Mr. Laughner and the claimant's work history after the date of the accident was not then a serious point at issue. It was doubtless upon such considerations that Judge LENCHER felt impelled to give the claimant an-

other opportunity to prove his case. Nor can we agree that the recital at a second hearing of an event not mentioned at an earlier hearing can be properly characterized as an inconsistency or contradiction in his testimony.

The employer vigorously contends, however, that, despite indications in its opinion to the contrary, the Board concluded that the referee's finding as to notice was not supported by *competent* evidence. It cites in support of its argument a number of cases, none save two of which involve workmen's compensation claims, holding that a party having the burden of proof cannot prevail if his evidence is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make findings thereon conjectural. *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864 (1961), is the most recent of the seven cases announcing this principle cited by the employer. The rule, however, is not directed to the *competency* of the evidence but to its *sufficiency* as a matter of law to support findings necessary to entitle the claimant to recover a lawsuit. The rule is not different from that applicable in administrative proceedings that findings must be supported by substantial evidence. The plaintiff in a civil suit at law must prove his case by evidence which is not uncertain or contradictory and the claimant in a workmen's compenesation case must carry the burden of proving his entitlement to relief by substantial evidence. Obviously, uncertain proof is insubstantial. Testimony which is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make a verdict of a jury or findings of a trial judge or the findings of an administrative fact finder mere conjectures is not adequate in lawsuits or substantial in administrative proceedings as a matter of law. Hence, despite its references to credibility, the Board in this case concluded as a matter of law that the claimant's testimony was so inconsistent

and contradictory as to be insubstantial rather than that it was not worthy of belief, our conclusion that it was neither inconsistent nor contradictory as a matter of law prevails. The employer also cites two cases in the workmen's compensation field: *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A. 2d 889 (1939), and *Gausman v. Pearson Co.*, 284 Pa. 348, 131 A. 247 (1925). Both involve the sufficiency of a physician's causation testimony and neither is apposite here. In *Monahan* the physician testified that the cause of disability could have been either the asserted accident or the natural progression of disease, and in *Gausman* the claimant's medical evidence showed that his paralysis could have been the result either of heat exhaustion as contended by the claimant, or a stroke. In the instant case, the claimant's testimony at the 1973 hearing was that he related his injuries to the mill superintendent within three weeks after they were sustained by accident in the course of his employment. While the Board might reasonably, in view of the claimant's failure to testify to this occurrence at an earlier hearing, and in view of other inaccuracies in the claimant's testimony, have disbelieved the claimant's testimony, it had no power in April of 1974 to overturn the finding of the referee who believed it.

The employer also complains of the fact that the referee who conducted the 1972 hearings made an independent and extrajudicial investigation of the whereabouts of Messrs. Ross and Laughner, the results of which he incorporated in his decision on the merits of the claim. The referee's investigation was undertaken, not in connection with the merits, but as the result of the employer's motion to dismiss and his finding based thereon, that contrary to the averment of the petition Mr. Ross was indeed available, was in support of his action on the petition. It did not control the substantive issue of notice.

The employer finally contends that the record does not support the referee's finding of disability. Our review of the record has lead us to the contrary conclusion of law.

Accordingly, we make the following

## ORDER

AND NOW, this 19th day of February, 1975, it is ordered that judgment be and hereby is entered in favor of the claimant, Michael S. Novaselec, and against the respondent, Jones & Laughlin Steel Corporation. Jones & Laughlin Steel Corporation is directed to pay the claimant, Michael S. Novaselec, compensation at the rate of $52.50 per week as follows:

| Compensation payable | | Compensation suspended | |
|---|---|---|---|
| From | To | From | To |
| March 10, 1966 | August 23, 1966 | August 24, 1966 | Sept. 11, 1966 |
| Sept. 12, 1966 | Sept. 27, 1966 | Sept. 28, 1966 | Feb. 8, 1967 |
| Feb. 9, 1967 | March 27, 1967 | March 28, 1967 | Aug. 11, 1969 |
| Aug. 12, 1969 | Sept. 7, 1969 | Sept. 8, 1969 | Nov. 2, 1971 |
| Nov. 3, 1971 | June 3, 1972 | July 1, 1972 | Nov. 30, 1972 |

Compensation is again payable commencing December 1, 1972 continuing to the present and into the future until such time that disability changes in nature or extent or ceases and terminates, all within the meaning of the Workmen's Compensation Act, as amended.

The defendant is granted subrogation rights for social insurance benefits paid the claimant at the rate of $52.50 per week for the following periods:

| Period | | | No. of weeks | Amount |
|---|---|---|---|---|
| 3/10/66 | to | 8/23/66 | 24-2/7 | $1,275.00 |
| 9/12/66 | to | 9/27/66 | 2 | 105.00 |
| 2/ 9/67 | to | 3/27/67 | 5-4/7 | 292.00 |
| 8/12/69 | to | 9/ 7/69 | 2-5/7 | 142.50 |
| Totals | | | 34-4/7 | $1,815.00 |

Interest at 6% per annum is assessed on all deferred payments.